**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SERGIO MORENO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:26-cv-09154** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROUNDY'S ILLINOIS, LLC D/B/A MARIANO'S,** | ) | |
| | ) | |
| | ) | **Jury Trial Demanded** |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, Sergio Moreno ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Roundy's Illinois, LLC d/b/a Mariano's ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended ("ADA"), seeking redress for Defendant's discrimination on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3. This action is authorized and instituted pursuant to 42 U.S.C. § 12101 *et seq*.

4. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

5. All conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*, have occurred or been complied with.

6. A charge of employment discrimination on the basis of disability and retaliatory discharge was filed by Plaintiff with the Equal Employment Opportunity Commission ("EEOC") (Attached hereto as Exhibit "A").

7. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B"), and Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

8. At all times material to the allegations of this Complaint, Plaintiff, Sergio Moreno, resides in Cook County in the State of Illinois.

9. At all times material to the allegations in this Complaint, Defendant, Roundy's Illinois, LLC d/b/a Mariano's, is a limited liability company doing business and employing individuals in and for Cook County whose address is 1500 N Clybourn Ave Unit C104, Chicago, IL 60610-2295.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. § 12111(4).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA, and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5)(A).

12. At all times material, Defendant was an "employer" as defined by 29 U.S.C.§ 2611(4).

## BACKGROUND FACTS

13. Plaintiff worked for Defendant as a Shipping and Produce Clerk from on or about March

15, 2026, until he was terminated on or about June 10, 2026.

14. Plaintiff suffers from physical impairments, specifically Coronary Artery Disease and prostate cancer.

15. Plaintiff's Coronary Artery Disease is a serious heart condition that causes chest pain and difficulty breathing, substantially limiting Plaintiff's major life activities.

16. Plaintiff's prostate cancer is a serious health condition that causes a variety of severe symptoms, and requires frequent medical appointments to manage and maintain a healthy condition.

17. These treatments can cause Plaintiff to become deeply sick, weak, and susceptible to strain on his body, thereby substantially limiting his major life activities.

18. Despite these disabilities, Plaintiff was qualified and able to perform the essential functions of his job, with or without reasonable accommodation.

19. Plaintiff is a "qualified individual" as defined under the ADA.

20. Plaintiff is "disabled" as defined under the ADA.

21. Plaintiff is a member of a protected class because of his disabilities.

22. Plaintiff's disabilities substantially limit one or more major life activities.

23. Before Plaintiff was hired, he disclosed to Human Resources Representative Meghan (LNU) that he suffered from a serious heart condition, Coronary Artery Disease, and prostate cancer.

24. Plaintiff explained that, in the past, he had a heart attack and subsequent open-heart surgery in or around April 2025.

25. Plaintiff further disclosed that he continued to experience ongoing symptoms related to his

heart condition, including occasional chest pain; nevertheless, he could perform his job.

26. Plaintiff disclosed that he underwent surgery in or around 2025 to remove his prostate as part of his cancer treatment.

27. Plaintiff further disclosed that he had been informed his cancer had begun returning and that he would require radiation treatment beginning in or around the end of June 2026.

28. Plaintiff disclosed this information to ensure Defendant was fully aware and advised of his health condition before hiring him.

29. In response, Meghan only asked Plaintiff whether he could satisfy the lifting requirements of the position.

30. Plaintiff responded that he could perform the job and only wanted to be forthcoming regarding his disabilities.

31. Defendant then hired Plaintiff.

32. After Plaintiff began working, he personally informed his Produce Manager, Robert (LNU), of his heart condition and prostate cancer diagnosis.

33. Plaintiff informed Robert that he had suffered a heart attack, undergone open-heart surgery, continued to experience heart-related symptoms, and would soon require radiation treatment because his cancer had returned, thereby putting Defendant on notice of a potential future need for accommodations.

34. Robert responded that Defendant would see how Plaintiff performed the job and that if Plaintiff became tired, experienced pain, or had difficulty lifting because of his condition, he could seek medical treatment.

35. As a result, Defendant, through Human Resources and management, was aware of Plaintiff's

disabilities and potential future need for accommodation.

36. Plaintiff began working at his job without issue or complaint, meeting all of Defendant's reasonable performance expectations.

37. On or about May 24, 2026, Plaintiff experienced chest pain while lifting a box at work.

38. Because of his cardiac history, Plaintiff monitored his symptoms.

39. When Plaintiff's chest pain persisted, he sought medical treatment on or about May 26, 2026.

40. Before going to the hospital, Plaintiff notified Meghan that he was experiencing chest pain and required medical attention.

41. Consistent with company policy, Plaintiff also informed Robert that he would be absent from work.

42. In taking these actions, Plaintiff was requesting reasonable accommodation and engaging in protected activity.

43. Plaintiff was evaluated at the hospital on or about May 26, 2026, and discharged the same day.

44. Plaintiff's cardiologist advised him that he would likely continue experiencing chest pain because of his heart condition.

45. Plaintiff's cardiologist verbally ordered him to take it easy, avoid working at a fast pace, and avoid lifting heavy objects that aggravated his condition.

46. Plaintiff was not provided written work restrictions at that time.

47. Following his hospitalization, Plaintiff waited to hear from Meghan regarding his return to work because he had been removed from the work schedule.

48. On or about June 1, 2026, Meghan informed Plaintiff that he could return to work only if he obtained a letter from his cardiologist clearing him to return.

49. Plaintiff immediately attempted to obtain the requested documentation.

50. Plaintiff was informed by his cardiologist's office that the requested paperwork could not be completed until he attended a follow-up appointment.

51. Plaintiff was further informed that the earliest available appointment was June 23, 2026.

52. Plaintiff explained to Meghan that he was attempting to obtain the requested documentation and that the delay was caused by the cardiologist's scheduling availability.

53. In response, Meghan agreed to place Plaintiff back on the schedule.

54. On or about June 9, 2026, Plaintiff was placed back on the work schedule and reported to work.

55. Plaintiff arrived early and provided Meghan with his hospital discharge paperwork.

56. Meghan copied Plaintiff's discharge paperwork but again insisted that Plaintiff provide a letter from his cardiologist as soon as possible.

57. Meghan also provided Plaintiff with additional paperwork for his cardiologist to complete.

58. On or about June 10, 2026, Plaintiff went to his cardiology clinic in an effort to obtain the documentation requested by Defendant in advance of his previously scheduled appointment.

59. Plaintiff explained to the clinic receptionist that Defendant was demanding paperwork from his cardiologist.

60. The receptionist contacted cardiology staff in an effort to assist Plaintiff.

61. Because Plaintiff had not yet attended his follow-up appointment, the requested paperwork could not be completed.

62. The receptionist and cardiology staff spoke directly with Meghan regarding the requested documentation.

63. During that conversation, the clinic advised Meghan that Plaintiff needed to be examined before the paperwork could be completed.

64. The clinic further advised Meghan that the earliest available appointment was June 23, 2026.

65. After the clinic staff concluded their conversation with Meghan, Plaintiff spoke with Meghan by telephone.

66. Meghan initially informed Plaintiff that he was required to provide the requested paperwork by June 12, 2026, or his employment would be terminated.

67. Plaintiff once again explained that he was actively attempting to obtain the requested documentation but could not do so before his June 23, 2026, appointment because the cardiology office would not complete the paperwork beforehand.

68. By doing so, Plaintiff was again requesting a reasonable accommodation of additional time to provide medical clearance and engaging in protected activity.

69. In response, Meghan terminated Plaintiff's employment, stating, "Forget about it, you're terminated."

70. Rather than permit Plaintiff to attend his scheduled appointment and provide the requested documentation, Defendant terminated his employment.

71. Defendant denied Plaintiff a reasonable accommodation for his disability.

72. Defendant failed to engage in the interactive process to determine an appropriate reasonable accommodation as required by the ADA.

73. Defendant terminated Plaintiff because of his disability.

74. Defendant's actions constitute unlawful disability discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation in violation of the ADA.

75. Defendant terminated Plaintiff because of his disabilities, his request for reasonable accommodation, and his potential need for disability-related medical leave and/or additional time to provide medical clearance returning him to work.

76. Plaintiff was terminated in retaliation for requesting a reasonable accommodation.

77. Defendant in effect denied Plaintiff's request for reasonable accommodation.

78. Defendant failed to engage in the interactive process required to determine an appropriate accommodation.

79. Plaintiff suffered multiple adverse employment actions including, but not limited to termination.

80. Defendant ultimately terminated Plaintiff's employment on the basis of his disability.

81. As a result of the foregoing, Plaintiff was subjected to discrimination and retaliation in violation of the ADA.

82. Other similarly situated non-disabled employees were not subject to the same treatment as Plaintiff.

83. Plaintiff met or exceeded performance expectations throughout the duration of his employment with Defendant.

84. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of income, loss of employment benefits, emotional distress, humiliation, embarrassment, and other damages.

85. Defendant's disability-based discrimination, failure to accommodate, and retaliation, coupled with Defendant's termination of Plaintiff, took a heavy mental toll on Plaintiff, who suffered and continues to suffer severe mental anguish and distress.

## COUNT I
**Violation of the Americans with Disabilities Act**

**(Disability-Based Discrimination)**

86. Plaintiff repeats and re-alleges paragraphs 1-85 as if fully stated herein.

87. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, Coronary Artery Disease and prostate cancer, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

88. Plaintiff met or exceeded performance expectations throughout the duration of his employment with Defendant, as to the best of his knowledge he never received non-discriminatory negative performance remarks.

89. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

90. Defendant terminated Plaintiff on the basis of Plaintiff's disability.

91. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

92. Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disability.

93. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

94. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT II**
**Violation of Americans with Disabilities Act**
**(Failure to Accommodate)**

95. Plaintiff repeats and re-alleges paragraphs 1-85 as if fully stated herein.

96. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

97. Plaintiff is a qualified individual with a disability.

98. Defendant was aware of the disability and the need for accommodations, as Plaintiff requested a reasonable accommodation in the form time off for medical appointments and additional time to receive paperwork.

99. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodation.

100. Plaintiff's requests were not an undue burden on Defendant.

101. Defendant did not accommodate Plaintiff's disability.

102. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*., due to Plaintiff's disability.

103. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

104. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT III
## Violation of Americans with Disabilities Act
## (Retaliation)

105. Plaintiff repeats and re-alleges paragraphs 1-85 as if fully stated herein.

106. Plaintiff is a member of a protected class under 42 U.S.C. § 12101, *et seq.*

107. During Plaintiff's employment with Defendant, Plaintiff requested a reasonable

accommodation from Defendant.

108. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

109. In response to Plaintiff's request for reasonable accommodation, Defendant retaliated against Plaintiff by terminating him.

110. By virtue of the foregoing, Defendant retaliated against Plaintiff based on his action of requesting reasonable accommodation, thereby violating Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

111. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity, specifically, termination.

112. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

113. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay;

b. Payment of interest on all back pay and benefits recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorneys' fees and costs;

g. Award pre-judgment interest if applicable; and

h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 31st day of July 2026.

/s/ ***Nathan C. Volheim***
**NATHAN C. VOLHEIM, ESQ.**
IL Bar No.: 6302103
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 568-3056
Fax (630) 575 - 8188
nvolheim@sulaimanlaw.com
*Attorney for Plaintiff*

/s/ ***Sophia K. Steere***
**SOPHIA K. STEERE, ESQ.**
KY Bar No.: 100481
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Phone (331) 307-7634
Fax (630) 575-8188
ssteere@atlaslawcenter.com
*Attorney for Plaintiff*

/s/ ***Jake Fondel***
**JAKE FONDEL, ESQ.**
IL Bar No.: 6354446
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148

Phone (331) 272-5953
Fax (630) 575 - 8188
jfondel@atlaslawcenter.com
*Attorney for Plaintiff*